AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| A blue Samsung cellular phone with scratches on the screen, IMEI 356408512380374 | ) Case No. 2:24-MJ-01284 |
| | ) |
| | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

*See Attachment A*

located in the Central District of California, there is now concealed:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Firearm and Ammunition |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of_____days (*give exact ending date if more than 30 days*:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Robert Castruita*

*Applicant's signature*

Robert Castruita, FBI Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

*Judge's signature*

City and state: <u>Los Angeles, CA</u>          Honorable Jean P. Rosenbluth, U.S. Magistrate Judge

AUSA: Daniel H. Weiner (x 0813)

**ATTACHMENT A**

<u>PROPERTY TO BE SEARCHED</u>

The following digital device (the "SUBJECT DEVICE"), seized on February 14, 2024, and currently maintained in the custody of the Los Angeles Police Department in Los Angeles, California:

1.    A blue Samsung cellular phone with scratches on the screen, IMEI 356408512380374.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of firearm and ammunition) (the "Subject Offense"), namely:

a.    Any photographs of firearms or ammunition, and any documents showing the purchase, storage, disposition, or dominion and control over any firearm or ammunition;

b.    Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from the digital device and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

c.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violation;

d.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violation;

e.    Records, documents, programs, applications, materials, or conversations relating to the sale or purchase of guns or ammunition, including correspondence, receipts, records, and documents noting prices or times when guns or ammunition were bought, sold, or otherwise distributed;

f.    Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of guns or ammunition;

g.    Contents of any calendar or date book;

h.    Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

i.    Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offense, and forensic copies thereof.

j.    With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.    evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software,

ii

as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v. evidence of the times the device was used;

vi. passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii. records of or information about Internet Protocol addresses used by the device;

ix. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2. As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3.   As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

**SEARCH PROCEDURE FOR DIGITAL DEVICES**

4.   In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The search team shall complete the search as soon as is practicable but not to exceed

120 days from the date of execution of the warrant.  The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

      b.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

      i.    The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the scope of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of items to be seized.

      ii.    The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

      iii. The search team may use forensic examination and searching tools, such as "EnCase," "Griffeye," and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

      c.    The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

d.   If the search determines that a digital device does not contain any data falling within the scope of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

e.   If the search determines that a digital device does contain data falling within the scope of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

f.   If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the scope of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

g.   The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

h.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.    The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6.    The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

## **AFFIDAVIT**

I, Robert Castruita, being duly sworn, declare and state as follows:

### **I.** **PURPOSE OF AFFIDAVIT**

1.    This affidavit is made in support of an application for a warrant to search the following digital device in the custody of the Los Angeles Police Department, in Los Angeles, California, as described more fully in Attachment A:

a.    A blue Samsung cellular phone with scratches on the screen, IMEI 356408512380374 (the "SUBJECT DEVICE").

2.    The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and ammunition) (the "Subject Offense"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. <u>BACKGROUND OF AFFIANT</u>

4.    I am a Police Officer of the Los Angeles Police Department ("LAPD") and a Task Force Officer ("TFO") of the Federal Bureau of Investigation ("FBI"), United States Department of Justice, and have been employed as a Police Officer for approximately 18 years.  I am currently a member of Harbor Area Narcotics Enforcement Detail and a TFO of the FBI's Violent Crime Major Offenders squad in Long Beach, California.

5.    Since joining the LAPD in 2005, I have received training in the investigation of violations of criminal law, such as drug-trafficking, firearm related offenses, including numerous hours of formal training at the LAPD Academy in Los Angeles, California.  During the time that I have been employed by the LAPD, I have participated in investigations relating to organized crime, narcotics, and firearm offenses.  I have participated in many aspects of criminal investigations including the issuance of subpoenas, reviewing evidence, conducting electronic and physical surveillance, working with informants, and the execution of search and arrest warrants. Additionally, I have interviewed and/or debriefed informants and other witnesses who had personal knowledge regarding the subject matters of the investigations in which I have been involved, including narcotics trafficking and firearms offenses.

6.    During my tenure as an investigator, I have participated in numerous investigations involving search warrants and arrest warrants, and the use of surveillance, confidential informants, cooperating defendants, and undercover

operations.  I have also analyzed financial and business records and executed search warrants for premises, email accounts, computers, and cell phones.  I have also received training to (a) review and analyze recorded conversations and records of drug traffickers and money launderers and (b) debrief cooperating drug traffickers and money launderers.  Through my training, education and experience, I have also become familiar with (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement, such as the concealment of evidence of crimes.

7.    I have participated in numerous investigations of violent crime, drug trafficking organizations, and large-scale street gangs, including gang investigations that have involved court-authorized interception of wire, oral and electronic communications.  I have become familiar with the methods, language, structures and criminal activities of street gangs and transnational gangs operating in and throughout Southern California and the Central District of California.  I have become familiar with street and leadership level activities of these gangs.  I have become familiar with the types and amount of profits made by narcotics traffickers and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal narcotic dealings.

8.    During the course of my career, I have personally interviewed numerous gang members and narcotics traffickers in

3

the investigations I have worked.  I have participated
frequently in the debriefing of a significant number of
cooperators, witnesses, Confidential Informants ("CI's"), and
defendants who had personal knowledge regarding criminal street
gang activity, major narcotics trafficking organizations, and
other criminal offenses, including violent crimes.  Through
these efforts, I have become very familiar with the methods used
by gang members and narcotics traffickers.  Specifically, I have
become knowledgeable about the investigative techniques that are
useful and viable in certain situations and those that are not.
I have also consulted with other investigators who have
extensive training and experience in criminal enterprises and
financial investigations.  I have executed numerous search
warrants for gang and narcotics investigations, seeking evidence
of the trafficking of controlled substances, weapons violations,
gang indicia, and violent crimes.

### III.  <u>STATEMENT OF PROBABLE CAUSE</u>

#### A.    **Law Enforcement Recover Multiple Firearms**

9.    On February 13, 2024, California Superior Court Judge
Laura Laesecke issued a warrant to search the residence of Edras
DURAN a.k.a. "Herk" for evidence, contraband, fruits, or
instrumentalities of violations of California Penal Code
Sections 29800 (A)(1) (felon in possession of a firearm), 182.5
(criminal gang conspiracy) and 186.22 (active participant in a
criminal street gang).

10.    Based on my personal involvement in the investigation
of the Rancho San Pedro ("RSP"") gang, my review of law

4

enforcement reports, and my review of communications among other RSP gang members, I know that DURAN is member of RSP.

11. Based on my personal involvement in the investigation my review of law enforcement reports, and my conversations with other law enforcement officers, I know the following:

    a.   On February 14, 2024, law enforcement executed the above-referenced search warrant at DURAN's residence. During the search, investigators recovered a loaded .40 caliber Glock semi-automatic handgun in a hallway closet leading from the bedrooms towards the front door of the residence.

    b.   Investigators also recovered a loaded Glock handgun magazine containing live 9mm ammunition and Glock gun parts in a closet located in the northern most bedroom of the residence. Investigators believe that bedroom belongs to DURAN based on personal property observed in the bedroom, including medicine, a prescription, and other medical documents in DURAN's name. Investigators also recovered the SUBJECT DEVICE from the bedroom.[1]

### B. DURAN is a Convicted Felon

12. Based on my review of DURAN's conviction documents, I know that he has been convicted of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

---

[1] Investigators also recovered a loaded 9mm Taurus semi-automatic handgun from the southernmost bedroom of the residence. Investigators believe the southernmost bedroom belongs Joseph GIACCO (another RSP member), based on GIACCO's personal property in the bedroom, including mail addressed to GIACCO and a California driver's license belonging to GIACCO.

a.    On or about December 26, 2012, a violation of California Health & Safety Code Section 11379(a): Transportation/Sales of a Controlled Substance in the Superior Court for the State of California, County of Los Angeles, Case Number NA09424501;

b.    On or about January 3, 2013, a violation of California Penal Code Section 496(a): Receiving Stolen Property in the Superior Court for the State of California, County of Los Angeles, Case Number NA09484501;

c.    On or about April 7, 2016, a violation of California Penal Code Sections 245(c): Assault with a Deadly Weapon on Police Officer, Penal Code Section 69: Obstructing a Police Officer, Vehicle Code Section 2800.2: Felony Evading, Vehicle Code Section 10851(a): Taking a Vehicle Without Owner's Consent in the Superior Court for the State of California, County of Los Angeles, Case Number NA10316301;

d.    On or about November 6, 2019, a violation of California Health and Safety Code Section 11370.1(a): Possession of a Controlled Substance While Armed in the Superior Court for the State of California, County of Los Angeles, Case Number YA10104401;

e.    On or about October 19, 2022, a violation of California Penal Code Section 29800(a)(1): Felon in Possession of a Firearm in the Superior Court for the State of California, County of Los Angeles, Case Number NA12079201.

13.    Accordingly, based on my training and experience (as described below) and the evidence recovered in DURAN's

6

residence, I believe that the SUBJECT DEVICE will contain evidence of the Subject Offenses.

### IV. TRAINING AND EXPERIENCE ON FIREARMS OFFENSES

14. From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct firearms investigations, I am aware of the following:

a. Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices. It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals. Such information is also kept on digital devices.

b. Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices. These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

c. Those who illegally possess firearms often sell their firearms and purchase firearms. Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices. This

includes sending photos of the firearm between the seller and
the buyer, as well as negotiation of price.  In my experience,
individuals who engage in street sales of firearms frequently
use phone calls, e-mail, and text messages to communicate with
each other regarding firearms that the sell or offer for sale.
In addition, it is common for individuals engaging in the
unlawful sale of firearms to have photographs of firearms they
or other individuals working with them possess on their cellular
phones and other digital devices as they frequently send these
photos to each other to boast of their firearms possession
and/or to facilitate sales or transfers of firearms.

       d.   Individuals engaged in the illegal purchase or
sale of firearms and other contraband often use multiple digital
devices.

## V.  <u>TRAINING AND EXPERIENCE ON DIGITAL DEVICES</u>

   15.  As used herein, the term "digital device" includes the
SUBJECT DEVICE.

   16.  Based on my training, experience, and information from
those involved in the forensic examination of digital devices, I
know that the following electronic evidence, inter alia, is
often retrievable from digital devices:

       a.   Forensic methods may uncover electronic files or
remnants of such files months or even years after the files have
been downloaded, deleted, or viewed via the Internet.  Normally,
when a person deletes a file on a computer, the data contained
in the file does not disappear; rather, the data remain on the
hard drive until overwritten by new data, which may only occur

after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.  The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.  Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain

9

"booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

17.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data in a short period of time for a number of reasons, including the following:

a.  Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

18.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VI. <u>CONCLUSION</u>

19.  For all of the reasons described above, there is probable cause that the items to be seized described in

Attachment B will be found in a search of the SUBJECT DEVICE

described in Attachment A.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 6th day of
March, 2024.


_____
HONORABLE JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE